Tracy Green (Bar No. 114876)
**FENNEMORE LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: tgreen@fennemorelaw.com

Attorneys for Judith Denning, Creditor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>EDWARD FREDRICK SPORL, IV,<br><br>Debtor. | Case No. 25-10287-DM<br><br>Chapter 11<br><br>**OBJECTION TO PLAN OF REORGANIZATION FOR SMALL BUSINESS DEBTOR UNDER CHAPTER 11, SUBCHAPTER V**<br><br>Date: July 11, 2025<br>Time: 10:00 a.m.<br>Place: Tele/Videoconference<br>Judge: Hon. Dennis Montali |

Judith Denning ("Denning") objects to the confirmation of the Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V filed by Edward Fredrick Sporl, IV ("Debtor") on May 15, 2025 as Docket No. 13 ("Plan") on the grounds set forth herein.

Prior to the commencement of this bankruptcy case, Denning obtained judgments against the Debtor totaling the sum of $435,172. He threatened to file bankruptcy for the sole purpose of getting rid of her claim if she did not go away for $20,000. True to his word, he first filed a bad faith chapter 13 on February 13, 2025, and later dismissed it after counsel for Denning threatened to seek sanctions against him if the case was not dismissed since he was not eligible to be a chapter 13 debtor as his debts exceeded the limit. In addition to his debt to Denning, he owed

1

Case: 25-10287    Doc# 37    Filed: 07/03/25    Entered: 07/03/25 14:28:34    Page 1 of 11
52381610.1/075384.0002

other creditors $578,000. Shortly after dismissing the first case, he commenced the above captioned case and filed the objectionable Plan, advising Denning through the Chapter V Trustee, Gina Klump that he wanted to reach a settlement with Denning. However, no settlement proposal has ever been presented.

## I.   FACTS

Judith Denning is over 80 years old and is a woman who sold her CPA practice, Denning & Company, to Gary Winston for over $468,000. Denning continued to be employed by Denning & Company pursuant to an employment agreement. Except for certain periods, Denning was the only CPA working at Denning & Company. Approximately 3-4 years after the sale to Winston, Winston sold his shares of Denning & Company to the Debtor for the sum of approximately $545,000.  (Sporl's schedules claim that entity has no value since all the clients were transferred to his other entities.)

During Denning's tenure as an employee of Denning & Company, both Winston and Sporl failed to pay her all her wages. Sporl and Winston sued Denning claiming she violated a noncompete clause of the sale agreement.  In 2021 Denning filed a cross complaint against them. Some of Dennings clients chose not to work Winston and Sporl, and so they assumed she had continued to do their work. That did not happen, and she did not breach the no compete clause in the sale agreement. However, the state court determined that the agreement was null and void. After years of delay and obscurations, a two-week jury trial was held and the jury determined that Denning was not paid for 800 hours of work. The jury found that  Winston failed to pay Denning the sum of $142,018.56  and Sporl failed to pay her the sum of $47,917.44. (See Judgement attached as Exhibit A to the Declaration of Judith Denning ("Denning Declaration") filed herein.

Denning was subsequently awarded attorney's fees in the sum of $389,105.00 which Sporl and Winston are jointly and severally liable. See Order Granting In Part Defendant and Cross-Complainant Judith A. Denning's Motion for Attorney's Fees attached as Exhibit A to the Denning Declaration. In addition, Denning was awarded prejudgment interest in the sum of $99,600 from Winston and $4,150 from the Debtor. In total,  Denning obtained judgments against Sporl for the sum of $432,172. Denning has incurred legal fees since those judgments were

2
Case: 25-10287   Doc# 37   Filed: 07/03/25   Entered: 07/03/25 14:28:34   Page 2 of 11
52381610.1/075384.0002

entered, and interest accrues on the state court judgements at 10% per annum.

Throughout the time Denning was pursuing her complaint for unpaid wages, Sporl and Winston raised multiple frivolous claims. The jury rejected their baseless claims. During the litigation Sporl and Winston did everything that they could to make the litigation as expensive as possible to mistreat Denning, who had built up her CPA practice and unfortunately sold it to Winston, who then sold it to Sporl. Rather than pay Denning the approximately $150,000 in wages, Winston and Sporl appear to have intentionally created a scheme to take advantage of Denning and avoid paying her wages while she continued to work for Denning & Company, and they enjoyed the fruits of her labor. The jury determined that Denning worked 800 hours for which she was not paid ( See, Denning Declaration, Exhibit B, Statement of Decision, P.14:15-16.). The jury also found that Sporl had the oversight and influence that resulted in Denning not being paid her wages, which the Court determined was sufficient to support a determination of willfulness under the Labor Code Section 203 thus resulting in waiting time penalties. The Statement of Decision also mentions Sporl's attempts to use a fake exhibit in his deposition ( page 8:4-6), and the fact that he obtained a loan to purchase the company by submitting a false legal opinion (Statement of Decision p.17-18). In addition, the Court found that Sporl and Winston never advised Denning that Sporl had purchased Denning & Company, and never informed the clients that he had purchased the business from Winston because it was a "pain in the ass". (Statement of Decision p. 9:2-12.)

Sporl filed a bad faith Chapter 13 case in February of 2025, case number 25-30111 which he dismissed after the undersigned counsel threatened to seek sanctions for the bad faith filing. The bad faith filing was due to the fact that he was not eligible to be a chapter 13 debtor because his debts exceeded the limit. There were other badges of bad faith in that chapter 13 as well. Denning believes that Sporl intentionally filed the chapter 13 knowing he was going to dismiss it so that he could collect money earned in his capacity as tax preparer in the first quarter of 2025. This Court can take judicial notice of its own records, and review case 25-30111, document 12, filed on February 19, 2025, Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period in which Sporl states that his monthly income was $13,750,

and his disposable income for plan payments was $2,365.00. A copy of it is attached as Exhibit C to Denning Declaration for the Court's convenience.

On the same day that Sporl commenced his chapter 13, Gary Winston has also filed a chapter 13 bankruptcy case that is pending before this Court, Case No. 25-30113-HLB, and which Winston converted to a chapter 7 ("Winston Case")..

Sporl has now filed a Plan that provides for payment in full to Denning, without any explanation or information as to how he is going to make those payments. No monthly operating reports have been filed. Exhibit B of the Sporl's Chapter 11 Plan before this Court indicates that his income is suddenly $19,166, but in 2026 it will increase by $10,000 because he will reduce his retirement contributions. That would mean that his current income is $29,166, or $348,000 a year and he has been putting almost half of that amount into his retirement accounts instead of paying his creditors. There is no reason why he should have in the past and be allowed to in the future shelter $120,000 a year in income from his creditors. The Plan provides that he will reduce his payments to his defined benefit plan effective in 2026, but that does not explain what is happening for the rest of this year, or how he is going to make the payments. Also, it is unclear if the contributions made were fraudulent conveyances. Presumably, Sporl sheltered the excessive funds while in his chapter 13, or before this Chapter 11 was filed. It does give this Court some insight into his past behaviors. The Debtor should be required to demonstrate what his income to date for the 2025 year has been, how much he has stashed into a defined benefit plan this year, whether it is over or under funded, and whether there is any basis to set that plan or the contributions aside. This question goes to the fundamental question as to whether Sporl has abused the bankruptcy process.

In his liquidation analysis he attributes no value to his entities that he operates as a tax return preparer. Even though when he purchased a practice he paid over $500,000 for it. As this Court knows, those entities can be sold and have some value. There is no evidence before this Court to support a valuation of $0.

Additionally, Sporl asks this Court to allow him to deposit Dennings monthly payments into a "disputed claims" account until he completes the prosecution of his appeal. However, since

4

Case: 25-10287    Doc# 37    Filed: 07/03/25    Entered: 07/03/25 14:28:34    Page 4 of 11
52381610.1/075384.0002

commencing his chapter 13 in February of 2025, he has made no attempt to prosecute his appeal. In fact, he filed a motion before this Court asking this Court to reinstate the automatic stay that is now preventing him from prosecuting his appeal, and he could have ask the court to exempt that litigation. He has no intention of prosecuting the appeal. Denning has agreed and hereby stipulates modify the automatic stay so that Sporl can proceed to prosecute his appeal. Sporl has a co-conspirator, Gary Winston who also filed a bad faith chapter 13 on the same date that Sporl filed his chapter 13 with the same counsel, Jon Vos, and the Winston Case was converted to a chapter7. Sporl must know that the appeal is frivolous, or he would be prosecuting the appeal. Sporl may contend that he cannot prosecute his appeal because of the stay in the Winston bankruptcy, but surely he can seek relief if he intends to pursue the appeal.

## II. DENNING OBJECTS TO SPORL'S PLAN ON THE FOLLOWING GROUNDS:

1. There is no evidence that Sporl can make the payments required under his proposed Plan which requires monthly payment of $8,176.98 if you consider his filing in February of 2025. Why the sudden increase in salary? Why the sudden amounts to be paid or withheld from a defined benefit plan. He claims he is going to forego making payments to his defined benefit plan in 2026 to be able to make the payments, but there is no evidence before this court as to how much he earns and what those payments would be. What is happening with his income between now and 2026? Furthermore, Sporl himself claims that he made a different amount in his Chapter 13 filings.

2. Debtor's schedules list Denning's claims as disputed; however, she has judgments which Sporl appealed. She did not file an appeal. Sporl appealed the judgments but has made no effort to prosecute the appeal even though Denning has and will stipulate to relief from stay to allow him to do so. Denning's claim should be deemed undisputed if Sporl does not prosecute the appeal within 30 days by obtaining orders modifying the automatic stay and notifying the appellate court that the stay is lifted, and the appellate court can proceed to set deadlines in the normal course of the appeal. A Debtor should not be able to stash funds in a disputed account without showing that he is in fact prosecuting the appeal.

3. Sporl created Denning's claims against him by intentionally not paying her wages while he benefited from the fruits of her labor. A jury has determined that he did not pay the wages. Rather than pay her what she was owed, he chose to litigate this matter and turn that debt into a judgments in excess of those wages. The court determined that his failure to pay wages was willful, and awarded a judgment in favor of Denning in the amount of $42,000 on that basis. The state court judge found that Sporl lied during his deposition by proffering a fake exhibit, and obtained a loan by submitted a fraudulent legal opinion. As stated above, Sporl also filed a bad faith chapter 13 case which allowed him to collect income during the first quarter of 2025 that is not being shared with the creditors of this estate, since he stashed it in a defined benefit plan. Any Sporl Plan will necessitate not only the trustee collecting and distributing payments to creditors, but also additional powers the same as a chapter 11 trustee to take all actions necessary to enforce the terms of the Plan. Otherwise, Sporl's bad faith activities will continue to the detriment of the creditors.

4. Denning has state court judgments and is thus entitled to interest at the state court judgment rate of 10% instead of the federal rate the Plan provides.

5. Denning objects to the estate's assets revesting in the Debtor upon confirmation. They should only revest upon plan competition of the Plan since it is not clear if the Plan will be performed, and based on Sporl's past behavior, there is no guarantee that the funds and assets of this case will be used as required to satisfy the creditors Under 11 U.S.C.A. §1141 (b), property of the estate typically vests in the debtor upon confirmation of the plan unless the plan or confirmation order provides otherwise. This statutory language explicitly allows for exceptions where the plan specifies that vesting will occur at a later time, such as upon completion of the plan. This flexibility is critical in cases where immediate vesting could undermine the plan's implementation or creditor protections (In re Consolidated Pioneer Mortg. Entities, 264 F.3d 803 ( 9th  2001)). (" Property of the estate vests in the debtor upon plan confirmation unless "otherwise provided in the plan".) Based upon the facts of this case, it is appropriate to have the assets revest in the Debtor upon full performance, so that creditors have some protection and can meaningfully enforce the terms of the Plan.

6. As stated above, Plan disbursements should be by the Subchapter V trustee, and the trustee should control and monitor the accounts and file monthly reports. Denning requests that the trustee be given the powers and authority to take action against the Debtor, as if she was a chapter 11 trustee, to monitor and enforce the Plan when it is confirmed.

7. The Debtor states that as a tax preparer he earns most of his income during the spring and fall tax seasons, yet his payments will be made monthly. The Court needs more information as to how he will make these monthly payments, and where his pre filing income went.

8. This Plan is illusory and in bad faith knowing Denning is over 80 years old, Debtor has set up a 5-year plan and Denning would not receive any distributions until his appeal is resolved. Since the Debtor is not taking any action to prosecute appeal, and the appeal could take years, the Plan is illusory as to Denning. Sporl has done nothing but delay paying Denning. He did not make the payments initially, then he delayed the state court litigation by adding spurious claims, filed a bad faith chapter 13, and now he seeks to delay payments to her indefinitely. What will happen to the funds in the disputed account when Sporl is still delaying that appeal and the 5 year Plan period is over? There is no evidence that he will ever pay Denning.

9. Sporl collected a lot of money and placed it in his defined benefit plan to avoid paying Denning during the period that the litigation was pending against him, and during the first quarter of this year while he was in his bad faith chapter 13. Denning needs time to do discovery to determine what assets Sporl has to make payments under the Plan.

### III. NO SETTLEMENT OFFER HAS BEEN MADE

The Debtor's status conference statement states, and the Subchapter V trustee Gina Klump, relayed, that Sporl intends to try to settle with Denning. Expecting a settlement offer of some type, Denning delayed her discovery to reduce her legal fees in this case. However, Sporl has not made any settlement offers as of this date, and therefore, Denning now has to conduct discovery and incur legal fees.

/ / /

/ / /

# IV     LEGAL ARGUMENT

## A.     The Debtor Has Not Complied with All the Provisions of The Code

A plan must be proposed in good faith. 11 U.S.C.A. § 1129(a)(1) and (2). Sporl claims that he can make the large payments required in the Plan but has not disclosed what his full income is so that this Court could determine what his disposable income is, nor has he disclosed how much he deposited into his defined benefit plan prior to filing this case. Sporl has failed to disclose in his filing all information that would allow this Court to determine how Sporl is going to make payments under the Plan.

## B.     The Plan Was Not Proposed in Good Faith

A plan must be proposed in good faith. 11 U.S.C.A. § 1129(a)(3). This case is really a two-party dispute where Sporl is trying to avoid paying Denning's judgment. The fact that he is not prosecuting his appeal, and he wants to withhold payments to her in an account that he controls until the appeal is resolved is further evidence of bad faith. The good faith requirement ensures that the plan will achieve a legitimate reorganization and is not a tactic to abuse the bankruptcy process. Sporl has demonstrated that he is all about delay, and this case gives him a bond free appeal without any urgency in resolving the appeal.

This Plan is also proposed in bad faith because it is nothing but an attempt to have a bond free appeal. The stay should be terminated, and the appeal prosecuted, or terminated. The Debtor should not have it both ways.

## C.     The Plan is Not Feasible

A plan must be feasible. 11 U.S.C.A. § 1129(a)(11). There is not sufficient information before the Court to determine how the Debtor is going to comply with the plan term and have the plan be feasible since there is no monthly operating reports or other financial information which would allow this Court to determine whether the Plan is feasible

## D.     The Assets Should Not Revest in the Debtor Upon Confirmation

Section 1141(b) authorizes assets to revests in the Debtor upon confirmation, unless the plan states otherwise. For the reasons stated above, creditors need extra protection and thus the assets should revest in the Debtor upon completion of plan payments.

### E. The Debtor Does Not Receive a Discharge Until Plan if Performed

It is axiomatic that the Debtor does not receive a discharge until all plan payments have been performed. Denning raises this to the Court's attention because Sporl's plan did not check the box that confirmed that, and Denning does not wish to litigate this fact in the future.

### V. CONCLUSION

The Debtor's Plan is unconfirmable and is just a mechanism to have a bond free appeal. There are many facts that are unknown to Denning at this time, and she needs to undertake discovery in light of the fact that Sporl is not making any serious attempts to settle with Denning, as Denning was led to believe. Therefore, Denning asks that this Court deny confirmation at this time.

DATED: July 3, 2025                    FENNEMORE LLP

By: */s/ Tracy Green*
    Tracy Green
    Attorneys for Judith Denning, Creditor

# CERTIFICATE OF SERVICE

I, Jeanne Rose, declare:

I am a citizen of the United States and am employed in the County of Alameda. I am over the age of 18 years and not a party to the within-entitled action. My business address is 1111 Broadway, 24th Floor, Oakland, California, 94607-4036.

On the date set forth below I caused to be served the following document(s):

**OBJECTION TO PLAN OF REORGANIZATION FOR
SMALL BUSINESS DEBTOR UNDER CHAPTER 11, SUBCHAPTER V**

**DECLARATION OF JUDITH DENNING IN SUPPORT OF OBJECTION TO PLAN OF REORGANIZATION FOR SMALL BUSINESS DEBTOR UNDER CHAPTER 11, SUBCHAPTER V**

on each party listed below in the following manner:

☐ BY FIRST CLASS MAIL:

☐ BY ELECTRONIC MAIL: by transmitting via email said document(s) to the email address set forth below.

☒ **(ECF)**: Pursuant to controlling General Orders and LBR, the foregoing document(s) will be served by the court via Notice of Electronic Filing ("NEF") and hyperlink to the document(s). On the date set forth below, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the list of parties to receive NEF transmission at the email addresses stated below:

Lars T. Fuller on behalf of Debtor Edward F. Sporl, 4th
Fullerlawfirmecf@aol.com, Larsfullerecf@aol.com

Tracy Green on behalf of Creditor Judith Denning
tgreen@fennemorelaw.com, courtfilings@fennemorelaw.com

Gina R. Klump
gklump@klumplaw.net, C204@ecfcbis.com

Joyce K. Lau on behalf of Debtor Edward F. Sporl, 4th
joyce@fullerlawfirm.net

Office of the U.S. Trustee / SR
USTPRegion17.SF.ECF@usdoj.gov

Gregory S. Powell on behalf of U.S. Trustee Office of the U.S. Trustee / SR
greg.powell@usdoj.gov, Tina.L.Spyksma@usdoj.gov

Phillip John Shine on behalf of U.S. Trustee Office of the U.S. Trustee / SR
phillip.shine@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 3, 2025, at Oakland, California.

                                            */s/ Jeanne Rose*
                                            JEANNE ROSE